# UNITED STATES DISTRICT COURT

__Eastern__ District of __Michigan__

UNITED STATES OF AMERICA

v.

Collin Seigle
_Defendant_

**ORDER OF DETENTION PENDING TRIAL**

Case Number: 13-30718

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been held. I conclude that the following facts require the detention of the defendant pending trial in this case.

## Part I—Findings of Fact

- [ ] (1) The defendant is charged with an offense described in 18 U.S.C. § 3142(f)(1) and has been convicted of a [ ] federal offense [ ] state or local offense that would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed - that is
  - [ ] a crime of violence as defined in 18 U.S.C. § 3156(a)(4).
  - [ ] an offense for which the maximum sentence is life imprisonment or death.
  - [ ] an offense for which a maximum term of imprisonment of ten years or more is prescribed in _____
  - [ ] a felony that was committed after the defendant had been convicted of two or more prior federal offenses described in 18 U.S.C. § 3142(f)(1)(A)-(C), or comparable state or local offenses.
- [ ] (2) The offense described in finding (1) was committed while the defendant was on release pending trial for a federal, state or local offense.
- [ ] (3) A period of not more than five years has elapsed since the [ ] date of conviction [ ] release of the defendant from imprisonment for the offense described in finding (1).
- [ ] (4) Findings Nos. (1), (2) and (3) establish a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of (an) other person(s) and the community. I further find that the defendant has not rebutted this presumption.

### Alternative Findings (A)

- [ ] (1) There is probable cause to believe that the defendant has committed an offense
  - [ ] for which a maximum term of imprisonment of ten years or more is prescribed in _____
  - [ ] under 18 U.S.C. § 924(c).
- [ ] (2) The defendant has not rebutted the presumption established by finding 1 that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

### Alternative Findings (B)

- [ ] (1) There is a serious risk that the defendant will not appear.
- [ ] (2) There is a serious risk that the defendant will endanger the safety of another person or the community.

## Part II—Written Statement of Reasons for Detention

I find that the credible testimony and information submitted at the hearing establishes by [ ] clear and convincing evidence [x] a preponderance of the evidence that

## Part III—Directions Regarding Detention

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

12/3/2013
_Date_

_Signature of Judge_

U.S. Magistrate Judge Mona K. Majzoub
_Name and Title of Judge_

*Insert as applicable: (a) Controlled Substances Act (21 U.S.C. § 801 _et seq._); (b) Controlled Substances Import and Export Act (21 U.S.C. § 951 _et seq._); or (c) Section 1 of Act of Sept. 15, 1980 (21 U.S.C. § 955a).

## Collin Seigle Order of Detention

Defendant is charged by way of federal criminal complaint with fraudulently inducing his unsuspecting clients to invest in a sham fund, aptly named Phoenix Capital, LLC, which he alone created and controlled, thereby converting more than $1 million to his own personal use.

Defendant is 27 years old. From March 7, 2011 through July 16, 2013 he was employed by Chase Bank as a licensed financial advisor. He worked in an Ann Arbor office of the bank. His job duties were to market and promote investment products offered by the bank, to analyze and formulate investment goals for his clients, and assist them in making the proper investments that would help them reach their goals. In 2011 he recommended that an 80 year old widow invest $140,000 into his personally created "Phoenix Capital" fund, leading her to believe that the fund was a product sponsored by Chase Bank. Instead of investing her money with a Chase Bank product, he deposited her money into his own Phoenix Capital LLC account, which money he then withdrew and quickly purchased for himself a 2013 Mercedes, a Harley Davidson motorcycle; Defendant then he made a down payment on a personal residence in Mason, Michigan, in addition to writing himself a personal check in the amount of $6000.

In April 2013, Defendant persuaded another client to invest $500,000 into the Phoenix Capital fund without telling the client that he was associated with the fund and that he was using the fund to finance his personal purchases. Defendant did not invest this client's money as promised, but rather immediately converted $83,351 into a cashier's check for the purchase of the residential property on Maple Street in Mason Michigan. On May 17, 2013 Defendant then persuaded this same client to invest another $390,000 of his money into the Phoenix Capital fund after convincing the client that the fund was doing well. On May 28, Defendant transferred $10,000 from the Phoenix Capital account into his personal checking account with Bank of America for his own use.

In February 2013, Defendant formed Seigle Holdings, LLC and Seigle Development, LLC, opening three checking business accounts with Bank of America for these businesses. Seigle was the sole signer on all three accounts. Between February and July 2013, Seigle transferred approximately $440,000 from te Phoenix Capital account into the Seigle Holdings accounts. Seigle also transferred $275,000 into the two Seigle Development accounts, using the money for various expenses, including $28,000 in checks made payable to Defendant Seigle personally, $16,500 in cash withdrawals, $76,043 for the purchase of a 2013 Porsche, and $208,596 paid to a construction company for renovations on his newly acquired property on Maple Street in Mason, Michigan.

In July 2013 Chase Bank officials confronted Defendant Seigle and during the interview Defendant acknowledged that he had misled his clients into believing that he was investing their money into Chase Bank products and not his own personal fund. He also asserted that he provided the two investors with a promissory note that identified him as having an interest in the fund. Defendant was unable to produce this alleged promissory note, or any documentation relating to Phoenix Capital, to his employer.

Defendant was terminated from Chase Bank on July 16, 2013.

Victim #1, the 80 year old widow, was allegedly defrauded of $140, 000 and Victim #2 was allegedly defrauded of two checks totaling $890,000. Defendant is charged with wire fraud as all three checks were electronically transferred from Chase Bank in Michigan to the Federal Reserve Bank in Chicago, and then electronically transferred to Bank of America in Michigan where the money was deposited directly in the Phoenix Capital account.

Defendant is an elusive guy with elusive ways. His driver's license shows his residential address as 2370 E. Stadium Blvd, Apt 425 in Ann Arbor, Michigan. When he was arrested on 11/30/13 he told the agent that he lived at 2370 E. Stadium Blvd, Apt 425 in Ann Arbor, MI. Oddly, that address is not a residence at all, but is and has been for years, a business, specifically a Mailboxes Express business. All three of Defendant's newly purchased vehicles (the Mercedes, the Porsche, and the Harley) were all registered to the Mailboxes Express business address in Ann Arbor, even though Defendant at that time was residing in Mason, Michigan, at 229 E. Maple Street. When the FBI agent left his card at the Maple Street address in July 2013, requesting that Defendant call him, there was no response. When the FBI Agent left a voice message on Defendant's cell phone in August, 2013, asking him to return the call or text him, Defendant did not respond. When Defendant's ex-roommate left a message for Defendant indicating that he had been contacted by the FBI and that they were looking for him, Defendant did not respond. When the FBI agent on November 6, 2013 called and left a voice message for Defendant indicating that an arrest warrant had been issued and that Defendant should contact him immediately, Defendant did not respond. When Defendant's friend, Harmony, called Defendant to inform him that she had been stopped by the police while driving a car registered to Defendant and was told that the FBI was looking for him and that there was an arrest warrant out for him, and that he should contact the authorities and turn himself in, Defendant did not respond.

Defendant was arrested for speeding by a Michigan State Trooper on November 29, 2013. He told the police officer that he lived in Lansing. The next day, November 30, he changed his story and told the U.S. Marshal that he lived in Mason, Michigan. In truth, he had been living "off the grid" since early August, 2013, in an effort to evade authorities.

Defendant was interviewed by Pretrial Services. He gave the Maple Street address in Mason, Michigan as his address. However in August 2013 Defendant had abandoned that address and packed his things without telling his roommate or any of his friends, and just disappeared, living here and there, sometimes sleeping on the couches of friends, such as Harmony, and other acquaintances.

Defendant also told Pretrial Services that he quit his job at Chase Bank in July 2013, but the evidence strongly reflects that this is a fabrication, as Defendant was fired on July 16, 2013 from his employment at Chase Bank when his scheme to defraud was discovered by the officers of the bank.

Defendant's personal history is also enigmatic. He has no relationship with his family whatsoever. He last communicated with his mother and sister seven years ago. He claims to have never met his father. He has no contacts with any extended family members. He lives in a vacuum, taking no responsibility for anyone and living completely under the radar. He has a child with an ex girlfriend whom he does not support, and whom he has abandoned, and she claims that his child support payments are in arrears.

Defendant asks for a bond with conditions. Clearly third party custody is not appropriate because there is no one person in his life who could logically act as a third party custodian. Defendant, by design, has no personal network and no social support of any kind available to him.

Pretrial Services has interviewed Defendant and concludes that he poses a flight risk for four reasons: 1) the nature of the charges in the complaint and/or Defendant's conduct during his arrest for the instant offense; 2) lack of familial, residential, community, employment, property, financial ties to this district and the district of his arrest; 3) lack of verifiable, legitimate employment; and 4) unexplained assets.

This Court agrees with the conclusions of Pretrial Services. The charges involve cold and calculated deception, the duping of innocent victims of more than $1 million dollars of their life savings which Defendant boldly converted to his own personal use. Defendant used deception to elude and evade the authorities, both before and after his arrest warrant issued. Defendant lives in a vacuum, with no accountability to any family member, circle of friends, business associates, or social network. He was fired from his job for his moral breaches of his ethical duties and remains unemployed. His only assets are those purchased with the money he stole from his victims. More than half of that money still remains unaccounted for, which gives Defendant access to the financial means of again eluding the officers of this Court and fleeing.

This Court finds that a preponderance of the evidence establishes Defendant to be a flight risk. There is no condition, or combination of conditions, which would reasonably assure Defendant's appearance in Court. Therefore Detention is Ordered.